UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


JASON GOUGE,                                    )
                 Petitioner,                    )
                                                )
v.                                              )     NOS.   2:07-CR-59
                                                )            2:08-CV-220
UNITED STATES OF                                )
AMERICA,                                        )
                 Respondent.                    )


**MEMORANDUM   OPINION**

Jason Gouge ("petitioner" or "Gouge"), a federal prisoner, has filed a "Motion Under 28

U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc.

29]. The United States has responded in opposition, [Doc. 37], and the time for any reply by Gouge

has long since passed. The matter is, therefore, ripe for disposition. The Court has determined that

the files and records in the case conclusively establish that Gouge is not entitled to relief under §

2255 and, therefore, no evidentiary hearing is necessary and the motion will be DENIED.


I.      **Procedural and Factual Background**

Gouge was initially charged by a criminal complaint filed in this Court on May 24, 2007,

with possession of 12 firearms after having been convicted of a crime punishable by imprisonment

for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1), [Doc. 1]. The federal grand jury

returned an indictment charging Gouge with the same offense on June 12, 2007, [Doc. 2]. On

September 6, 2007, Gouge entered a plea of guilty as to the one count indictment pursuant to a

negotiated plea agreement filed on August 17, 2007, [Doc. 18]. A presentence report ("PSR") was

ordered and was disclosed to the parties on November 28, 2007. The PSR, unobjected to by either

party, established that Gouge was subject to an advisory guideline range for imprisonment of 41 to 51 months and he was sentenced, on January 7, 2008, to a 48 month term of imprisonment. Judgment was entered on January 11, 2008, [Doc. 28]. No direct appeal was filed and the instant motion to vacate was timely filed on July 25, 2008.

Gouge's plea agreement contained the following stipulations concerning the factual background in the case:

> 4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts which satisfy these elements. These are the facts submitted for the defendant's guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case. The defendant does not admit that the possession of any firearm was used or possessed in connection with the commission of another offense. In light of conflicting statements regarding the nature of the possession of the firearm, the government agrees not to present proof in support of an enhancement pursuant to U.S.S.G. § 2K2.1(b)(6). The parties agree pursuant to Rule 11(c)(1)(C) that the enhancement under U.S.S.G. § 2K2.1(b)(6) should not apply in this case.

> On the evening of May 20, 2007, officers with the Unicoi County Sheriff's Department (UCSD) were dispatched to Pippin Hollow Road, Erwin Tennessee, in the Eastern District of Tennessee, regarding an armed person that had threatened several fire fighters. This person was identified as Jason Gouge, who was a convicted felon at the time of this incident.

> The police officers had obtained an arrest warrant for Gouge. They placed several phone calls to the residence and spoke with Gouge.

> Gouge refused to surrender to officers so the officers used a torch to cut the gate to Gouge's driveway to approached [sic] the residence. After knocking on Gouge's door several times, officers made forcible entry into the residence. Officers located Gouge in the master bedroom.
> Officers searched the residence and premise and located the

below-listed firearms:

    a.      a loaded Ruger model 10/22 .22 caliber semi-automatic rifle

    b.      a loaded, Reminton model 700 30-06 caliber bolt-action rifle

    c.      CBC .22 caliber semi-automatic rifle

    d.      Winchester model 370 410 gauge single-shot shotgun

    e.      Mossburg model 835 12 gauge pump-action shotgun

    f.      Winchester model 705A 308 caliber bolt-action rifle

    g.      Marlin model 882SS .22 caliber semi-automatic rifle

    h.      CBC model SB .410 single-shot shotgun

    i.      Remington model 7 308 caliber bolt-action rifle

    j.      Marlin model 60G 410 gauge single-shot shotgun

    k.      a loaded, Ruger model Mark III .22 caliber semi-automatic pistol

    l.      a loaded, Beretta model U22 .22 caliber semi-automatic pistol

    m.      a loaded, Bersa model Thunder 380 .380 caliber semi-automatic pistol

It was determined by the Bureau of Alcohol, Tobacco, Firearms, and Explosives that none of these firearms were manufactured in the state of Tennessee, and that they all traveled in interstate commerce. Gouge's prior felony convictions were for aggravated assault and reckless endangerment in the Criminal Court of Unicoi County.

## II.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court

may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III.    Analysis and Discussion

The petitioner generally states his grounds for relief in his § 2255 motion as: (1) the PSR erroneously determined that Gouge was subject to a 4-level enhancement pursuant to USSG § 2K2.1(a)(4)(A),  and (2) ineffective assistance of counsel. Gouge makes several claims of ineffective assistance of counsel as follows: (1) counsel "failed to perfect a tmely [sic] appeal or meet with Movant to discuss the ability to appeal based upon the erroneous application and enhancement;" (2) counsel was ineffective for allowing Gouge to enter into a plea agreement which permitted the government to rescind its agreement with respect to the acceptance of responsibility reduction in offense level if Gouge's base offense level fell below 16; (3) counsel's ineffectiveness

"bootstrapped" Movant from arguing the 8-level reduction for possession of firearms associated with sporting or recreational use pursuant to USSG § 2K2.1(b)(2); and (4) counsel was ineffective for failing to either postpone sentencing to a date after the Supreme Court's decision in *Begay v. United States*[1] or to argue that, because of *Begay*, the "crime of violence" enhancement did not apply to Gouge. The Court will address each of these claims in turn.

### A. Failure to File Notice of Appeal

Petitioner's claim here is stated in a one sentence paragraph of his memorandum: " . . . [counsel] failed to perfect a tmely [sic] appeal or meet with Movant to discuss the ability to appeal based upon the erroneous application and enhancement." Gouge alleges no facts in support of his argument. Further, he does not allege that he directed counsel to file a notice of appeal nor does he even allege that he had any interest in appealing at the time of the entry of judgment. He does not further develop the argument in any way.

As set forth above, a defendant must, in his § 2255 motion, set forth facts which show his entitlement to relief. *Green*, 454 F.2d at 53. His conclusory statements, without allegations of fact, are not sufficient to warrant a hearing, *O'Malley*, 285 F.2d at 735, and are without legal merit. *Loum*, 262 F.2d at 867. Importantly, even after the government raised, in its response, Gouge's failure to make factual allegations, Gouge failed to provide substantiating facts. Gouge filed no reply to the government's response and did not even attempt to supplement his original motion or to provide an affidavit setting forth the facts which support this claim. His failure is fatal to the claim.

In the context of a failure by counsel to file a notice of appeal, the question of whether such

---

[1]   533 U.S. 137, 128 S.Ct. 1581, 170 L.Ed. 2d 490 (2008).

failure constitutes ineffective assistance of counsel is governed by the rule set forth in *Roe v. Flores-Ortega,* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that an attorney who disregards instructions from his client to appeal has acted "in a manner that is professionally unreasonable." *Id.* at 477. Moreover, when an attorney fails to follow express instructions to appeal, prejudice is presumed. *Id.* at 483. If the petitioner did not specifically direct his attorney to file an appeal, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes. *Id.* at 478. If so, the attorney has acted unreasonably only if he ignored the petitioner's wishes to appeal. *Id.* If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult. *Id.* Consulting a client about appealing is not constitutionally required in every case. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id.* at 479 (emphasis in original).

An attorney has a constitutionally imposed duty to consult when there is reason to think either (1) that a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal), or (2) his client reasonably demonstrated an interest in appealing. *Id.* at 480. In making this determination, courts must take into account all the information counsel knew or should have known at the time. *Id.* Highly relevant factors include whether the conviction resulted from a trial or a plea and whether the defendant expressly waived his appellate rights. *Id.* Because the failure to file a notice of appeal results, not in the denial of a fair proceeding, but in the denial of a proceeding all together, the prejudice prong of the *Strickland* test for ineffectiveness of counsel in this context requires the petitioner to demonstrate that, but for his counsel's omission, there is a

reasonable probability that he would have timely appealed. *Id.* at 480.[2]

Petitioner has not alleged that his attorney had any duty to file a notice of appeal because he was requested by the petitioner to do so. As a result, there is no *per se* violation of the petitioner's Sixth Amendment right to counsel. The Court must next determine, however, whether counsel consulted with the petitioner concerning his appeal rights and, if not, whether counsel had any duty to consult with the petitioner concerning his right to appeal. The Court will assume that counsel did not consult with the petitioner concerning his appeal rights after judgment was entered as it appears that such an allegation is implicit in the statement of petitioner's claim.

In determining whether petitioner's attorney had a duty to consult with him subsequent to sentencing concerning his right to a direct appeal, the Court must apply the two-part test set forth above and determine whether or not a rational defendant would want to appeal or whether the particular client reasonably demonstrated an interest in appealing. In making this determination, as set forth above, this Court must take into account all of the information counsel knew or should have known at the time.

Considering the circumstances set forth above, the Court concludes from the record that, although counsel did not specifically consult with the defendant concerning his appeal rights immediately after sentencing, counsel had no duty to do so and therefore the failure to do so did not violate the Sixth Amendment. As noted above, the petitioner makes no allegation that he even expressed an interest in appealing to his attorney. That, taken in the context of petitioner's waiver of his right to a direct appeal in his plea agreement with the United States and the lack of any nonfrivolous grounds for appeal, as set forth below, establish that it was not error for counsel to fail

---

[2] Gouge does not make this allegation, either.

to consult with her client concerning an appeal immediately following the entry of judgment because, on the facts presented, no rational defendant would have desired an appeal.

The petitioner acknowledges his waiver of his right to direct appeal in the plea agreement and he does not suggest that the waiver was not a knowing and voluntary waiver. The petitioner in fact quotes directly from paragraph ten of his plea agreement which contains his waiver of his right to file a direct appeal. That paragraph provides that "defendant knowingly and voluntarily waives the defendant's right to appeal the conviction(s) and/or a sentence(s) imposed within the applicable guideline range as determined by the sentencing court in this case." Furthermore, as discussed below, the defendant does not identify any nonfrivolous grounds for appeal, and he certainly identifies no grounds which are not within the scope of his waiver of direct appeal.

Not only that, on the date of sentencing, the Court announced that there had been no objections to the advisory guideline range calculated in the case, and Gouge, despite having an opportunity to address the Court, never expressed any objection to the calculation of his guideline range contained in the PSR, something he had every opportunity to do. Gouge took full advantage of his right to allocute at sentencing and he made a very lengthy oral statement to the Court. *See* generally, Transcript of Proceedings, Doc. 33.

Gouge was also advised by the Court, at the conclusion of the sentencing hearing, of his right to appeal in the case and was specifically advised that a notice of appeal must be filed within ten days of the entry of the judgment and that, if he requested, the clerk of the court would prepare and file the notice of appeal for him. He made no request of the Court at that time to have the clerk prepare and file the notice nor did he indicate any interest in appealing at the time. Petitioner's claim that his counsel was ineffective with respect to the filing of a notice of appeal is without merit.

10

**B.     USSG  § 3E1.1**

Gouge next argues that counsel "was ineffective in persuading Movant to enter into the plea agreement in this case, which permits the Government to categorically rescind the 'acceptance of responsibility' it had promised for Movant for consideration and concession, if Movant's Base Offense Level fell below 16."   He refers to the plea agreement as "no more than a unilateral agreement entitling the prosecutor to extract a pragmatic, blind plea, without recourse." [3]

Once again, petitioner alleges absolutely no facts which would support his claim that counsel "persuad[ed]" him to enter the plea agreement.  This argument fails for that reason alone.  More fundamentally, however, petitioner's argument represents a basic misunderstanding of the provision of his plea agreement in question and the underlying provision of the sentencing guidelines.

Paragraph six of petitioner's plea agreement states that "the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines.  Further, if defendant's offense level is 16 or greater, the United States agrees to move, at or before the time of sentencing, that the court decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines."   The essence of Gouge's argument here appears to be that, because the PSR determined his total offense level to be 21, this provision in the plea agreement prevented him from seeking a decrease in his offense level pursuant to USSG § 2K2.1(b)(2) because it would reduce his guideline level to a level below 16, in which case the government would not move for the one additional level pursuant to USSG § 3E1.1(b).

---

[3]   He also accurately points out that the plea agreement contains a promise by the government to dismiss non-existent counts of the one count indictment.  The government does, however, make other promises to Gouge which provide adequate consideration for the agreement.

Gouge's claim, as noted above, is based on a misunderstanding of the provisions of both his plea agreement and the sentencing guidelines. Paragraph six of the plaintiff's plea agreement simply mirrors the provisions of USSG § 3E1.1, which provides for a two level decrease in the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," USSG § 3E1.1(a), and an additional one level decrease in offense level "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently," and if the defendant qualifies for the decrease in subsection (a) and his offense level is 16 or greater. Paragraph six of petitioner's plea agreement did not alter in any way the provisions of § 3E1.1 and simply reflect a concession on the part of the government that it would not oppose the two level decrease in offense level provided in subsection (a) and would file the motion required by subsection (b), if petitioner's offense level was 16 or greater. This provision of the plea agreement did not prevent the petitioner from seeking any other decrease in offense level which was appropriate under the sentencing guidelines. Thus, counsel was not ineffective and did not render deficient performance and, in any event, since petitioner's guideline range would have been the same with or without the provisions of paragraph six of his plea agreement, he can show absolutely no prejudice. This issue is completely without merit.

## C.    Petitioner's Base Offense Level Under USSG § 2K2.1(a)(4)(A)

The PSR established a base offense level for petitioner's violation of 18 U.S.C. § 922(g)(1) as 20 pursuant to USSG § 2K2.1(a)(4)(A) which provides for a base offense level of 20 if the defendant committed the instant offense subsequent to sustaining one felony conviction of either a

12

crime of violence or a controlled substance offense. "Crime of violence" means a felony offense which "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, includes use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a). The commentary to § 4B1.2 provides that "crime of violence" includes aggravated assault.

The petitioner argues that his base offense level should have been 14 pursuant to § 2K2.1(a)(6) because the PSR erroneously determined that his conviction for felony reckless operation of a motor vehicle constituted a crime of violence for the purpose of applying § 2K2.1(a)(4)(A). He further claims that counsel was ineffective for not seeking a delay in his sentencing until the United States Supreme Court decision in *Begay* or further arguing that his conviction for felony reckless operation of a motor vehicle was not a crime of violence.

As the government argues, petitioner's claim is both factually and legally incorrect. Petitioner argues that the PSR assigned a base offense level of 20 because of his prior felony reckless operation of a motor vehicle conviction. That is not correct. The PSR makes it clear that the assignment of a base offense level of 20 results from petitioner's May 2, 1997 conviction for the felony offense of aggravated assault in Unicoi County, Tennessee Criminal Court. Petitioner's argument conveniently overlooks the fact that, although he was convicted on that date of three counts of reckless endangerment involving the operation of a motor vehicle, he was also convicted of a felony offense of aggravated assault, and it was the aggravated assault conviction which resulted in the base offense level of 20.

As noted above, aggravated assault is one of the offenses enumerated in the commentary to

13

§ 4B1.2 as a crime of violence. Likewise, the relevant Tennessee statute, T.C.A. § 39-13-102, clearly establishes that the offense of aggravated assault under Tennessee law involves the use or threatened use of physical force. The Sixth Circuit has, on several occasions, held that aggravated assault is by definition a crime of violence. *See United States v. Peterson*, 1997 WL 225499 at *2, 113 F.3d 1236 (Table) (6th Cir. 1997) ("a conviction for aggravated assault is specifically included in the definition of a crime of violence for purposes of this calculation. USSG § 2K2.1, comment. n.5 (referring to USSG § 4B1.2, comment. n.2)); *United States v. Bowman*, 290 Fed. App'x 863, 866 (6th Cir. 2008) (aggravated assault in violation of T.C.A. § 39-13-102[4] is crime of violence pursuant to USSG § 4B1.2). *See also United States v. McFalls*, 592 F.3d 707, 716 (6th Cir. 2010) (applying Model Penal Code definition of generic aggravated assault to determine that a person who is guilty of aggravated assault because he acts with specific intent, or acts recklessly under circumstances manifesting extreme indifference to the value of human life with malignant recklessness and causes serious bodily injury, has committed a "crime of violence"); *United States v. Fifer*, 377 Fed. App'x. 429, 2010 WL 1923765 (6th Cir. 2010) (implicitly acknowledging that aggravated assault under Tennessee law is a crime of violence under § 4A1.2); *United States v. Baker*, 559 F.3d 443, 451 (6th Cir. 2009) (acknowledging that aggravated assault under Tennessee law is a crime of violence); *United States v. Stanback*, 166 Fed. App'x. 190 2006 WL 278382 (6th Cir. 2006) (finding that aggravated assault as defined in T.C.A. § 39-13-102 is a crime of violence).

---

[4] Tennessee Code Annotated Section 39-13-102 provides that a person commits aggravated assault if he or she:
  (1) intentionally or knowingly commits an assault as defined in § 39-13-101 and :
        (A) causes serious bodily injury to another; or
        (B) uses or displays a deadly weapon; or
  (2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
        (A) Causes serious bodily injury to another; or
        (B) uses or displays a deadly weapon.

Furthermore, defendant's reliance on *Begay* is misplaced. As noted above, petitioner's base offense level under § 2K2.1(a)(4)(A) was based on his prior conviction for aggravated assault, not his prior conviction for reckless endangerment. Because petitioner's argument concerning *Begay* is based on his mistaken belief that his base offense level was arrived at because of his prior conviction for reckless endangerment, *Begay* has no application to this case and his argument about whether or not reckless endangerment is a crime of violence after *Begay* is irrelevant. Petitioner's conviction for aggravated assault is undoubtedly a crime of violence and that conclusion is not changed by *Begay*. The Tennessee aggravated assault statute "unlike the statute at issue in *Begay* . . . unambiguously defines a crime of violence . . . " *See United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008) (considering Michigan's aggravated assault statute). Petitioner's argument concerning his base offense level is without merit.

**D.    Application of USSG § 2K2.1(b)(2)**

As set forth above, petitioner alleges that the terms of his plea agreement somehow prevented him from arguing for a reduction in offense level pursuant to § 2K2.1(b)(2) which provides for a reduction in offense level if the defendant possessed firearms solely for lawful supporting purposes or collection and did not unlawfully discharge or use such firearms. USSG § 2K2.1(b)(2). He does not explicitly argue that counsel was ineffective for not arguing that his offense level should have been reduced pursuant to this guideline. To the extent that he is claiming ineffective assistance of counsel related to § 2K2.1(b)(2), however, his argument lacks merit.

First of all, once again petitioner has alleged no facts upon which the Court could base any conclusion that § 2K2.1(b)(2) applies to his case. This alone is fatal to his claim. More fundamentally, however, his argument fails because the explicit language of the guideline

15

establishes that it does not apply to the defendant. Section 2K2.1(b)(2) provides for a reduction in the offense level under the circumstances described in the guideline but expressly provides that it does not apply to a defendant subject to § 2K2.1(a)(4). Thus, the express language of the guideline excludes the petitioner from benefitting from the reduction in offense level. Because the reduction in offense level for possession of firearms solely for lawful sporting purposes or collection did not apply to Gouge's case, the failure to seek such a reduction in offense level cannot establish either deficiency or prejudice as needed for a claim of ineffective assistance of counsel.

## V.      Conclusion

For the reasons set forth above, the Court hold petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

16

or wrong."   Having examined each of the petitioner's claims  under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong.   Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.


ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE